[Cite as *Jowiski v. Gustafson-Jowiski*, 2024-Ohio-197.]

STATE OF OHIO      )        IN THE COURT OF APPEALS
                  )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN      )

DANIEL JOWISKI

     Appellee

     v.

LESLIE GUSTAFSON-JOWISKI

     Appellant

C.A. No.      23CA011939

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.      97DU052353

DECISION AND JOURNAL ENTRY

Dated: January 22, 2024

STEVENSON, Judge.

**{¶1}** Leslie Gustafson-Jowiski appeals from the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, which upheld a magistrate's decision amending an original stipulated qualified domestic relations order ("QDRO"). This Court reverses and remands for further proceedings consistent with this opinion.

I.

**{¶2}** This is not the first appeal filed by Ms. Gustafson-Jowiski ("Wife"). Wife first appealed the trial court's judgment in *Jowiski v. Gustafson-Jowiski*, 9th Dist. Lorain No. 21CA011807, 2022-Ohio-2816 ("*Jowiski I*"). This Court summarized the pertinent facts as:

> Ms. Gustafson-Jowiski ('Wife') and Daniel Jowiski ('Husband') married in 1982, legally separated in 1996, and divorced in 1997. As part of the divorce, the trial court issued a stipulated qualified domestic relations order ('QDRO'). In it, the trial court determined that Wife was entitled to one-half of Husband's retirement benefits from the Ford Motor Company for years the parties were married. Specifically, it stated that:

> [T]he amount payable to [Wife] shall be the amount otherwise payable to [Husband] as follows: one-half (1/2) of the fraction the numerator of which is the number of years [Husband] participated in said plan while married to [Wife], the denominator of which is the total number of years [Husband] participates in said plan, times the benefits to be received.

The QDRO provided that the trial court retained jurisdiction to amend the order to carry out its terms and intent, and that the trial court 'specifically reserve[d] the right to make such Orders as it deems necessary to provide [Wife] with all benefits to which she is entitled or that are necessary to effectuate the terms of the Plan[.]'

In 2020, Husband filed a 'Motion to Modify and Clarify Judgment Entry Regarding [Husband's] Retirement and Pension' ('Motion to Modify'). In it, he asserted that he worked for Ford for 12 years while the parties were married, continued to work there after the divorce, and was set to retire after working there for over 35 years. He asserted that, while he was married to Wife, he did not actively contribute to his retirement. According to Husband, had he continued to not actively contribute to his retirement, he would have been entitled to receive approximately $1,700 per month in retirement benefits from Ford. Husband asserted that, after the divorce, he began actively contributing to his retirement, which significantly increased the benefits he was entitled to receive upon his retirement. According to Husband, as a result of his active contributions, he was now set to receive approximately $6,400 per month in retirement benefits.

Husband asserted that Ford interpreted the calculation set forth in the QDRO to mean that Wife was entitled to receive the benefit of Husband's post-divorce active contributions to his retirement. He asserted that Wife should instead receive the amount she would have been entitled to had he not started actively contributing to his retirement after their divorce. He asserted that Ford's interpretation of the QDRO was not consistent with the parties' intent and requested that the trial court issue an order modifying and clarifying the language of the QDRO to effectuate its intent.

Wife then moved the trial court for an order allowing QDRO Group, LLC, a company based in Medina, to evaluate the QDRO to determine the amount of Husband's Ford retirement benefits she was entitled to receive. The magistrate granted Wife's motion.

The magistrate set the matter for a hearing. On August 19, 2021, Husband, Husband's counsel, and Wife's counsel appeared in person. At Wife's counsel's request, the magistrate called Wife, who lives in Texas. Wife indicated that she just received documents from Ford, so her counsel requested a continuance to allow her to review the documents. The magistrate indicated he would grant the continuance and advised Wife to ensure that she was prepared for trial. * * * That decision was journalized on the docket on August 23, 2021. * * *

On September 7, 2021, the magistrate held a hearing on Husband's Motion to Modify. Husband, Husband's counsel, and Wife's counsel appeared for the hearing. Wife did not appear. Despite the fact that Wife had moved for an order allowing QDRO Group, LLC to evaluate the QDRO, Wife did not procure an expert report. Instead, Husband retained QDRO Group, LLC to evaluate the QDRO and prepare a report.

James Myers, Jr., the managing principal of QDRO Group, LLC, testified as an expert on behalf of Husband. He opined that Wife was entitled to the non-contributory portion of Husband's retirement benefits (i.e., the benefit he would have been entitled to receive had he not started actively contributing to his retirement), and that the contributory portion (i.e., the benefit he was entitled to receive as a result of his post-divorce active contributions to his retirement) was Husband's separate property. He then testified that, calculating the amount Wife was entitled to receive based upon the non-contributory portion of Husband's retirement benefits, Wife was entitled to receive $287.08 per month.

On cross-examination, Mr. Myers acknowledged that Ford's interpretation of the QDRO was technically correct because the QDRO did not distinguish between contributory and non-contributory portions of Husband's retirement benefits. He then testified that the QDRO would need to be amended to account for the fact that, after the parties divorced, Husband began actively contributing to his retirement.

One week after the hearing, the magistrate granted Husband's Motion to Modify. Consistent with Mr. Myer's expert opinion, the magistrate found that Wife was entitled to receive $287.08 per month from Husband's Ford retirement benefits. The magistrate indicated that Husband may submit an amended QDRO to effectuate the intent of his decision.

\* \* \*

\* \* \* The trial court adopted the magistrate's decision the same day.

*Jowiski I* at ¶¶ 1-12. Because Wife failed to pay a contempt of court fine, the trial court did not consider her objections to the magistrate's decision. *Id*. at ¶ 12.

{¶3} Wife maintained in *Jowiski I*, in her second assignment of error, that the trial court erred by dismissing her objections to the magistrate's decision. *Id*. at ¶ 13. This Court agreed and "remand[ed] the matter for the trial court to consider Wife's objections to the magistrate's decision in the first instance." *Id.* at ¶ 17.

**{¶4}** Wife asserted in her first assignment of error that the trial court lacked jurisdiction to modify the final divorce decree because she did not consent to the modification. In light of this Court's ruling on the second assignment of error, it concluded in *Jowiski I* that Wife's first assignment of error was premature. *Id*. at ¶ 19.

**{¶5}** On remand, after Wife purged her contempt and after an oral hearing was held on her objection to the magistrate's decision, the trial court issued a written decision overruling Wife's objection. The trial court found that "that there is no ambiguity as to the provisions of the division of [Husband's] retirement benefits pursuant to the parties' divorce decree dated April 16, 1997." The trial court also found that "[t]he parties clearly intended that [Wife] was to receive one-half of [Husband's] pension ***accumulated during the marriage***" and that "awarding one-half of [Husband's] entire pension past the date of the parties' legal separation could not be foreseen at the time of [Husband's] actual retirement." (Emphasis sic.)

**{¶6}** According to the trial court, it was "not modifying the parties' original divorce decree[,]" rather, it was "merely facilitating and/or effectuating the parties' intention at the time of their divorce." The trial court "determine[d] that [Wife's] interest in [Husband's] pension is one-half of the amount of [Husband's] pension that was accumulated during the marriage from January 22, 1982 to July 10, 1996[]" and that "[a]ny subsequent QDRO shall effectuate the parties' (sic) to divide [Husband's] pension pursuant to the parties' divorce decree in April of 1997." The trial court adopted the magistrate's decision amending the original stipulated QDRO.

**{¶7}** Wife appeals the trial court's order, asserting one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT LACKED [JURISDICTION] TO MODIFY A FINAL DECREE OF DIVORCE BECAUSE BOTH PARTIES DID NOT CONSENT TO SAID MODIFICATION.**

**{¶8}** Wife argues that the trial court modified the terms of the final decree of divorce and that, because she did not consent to the modification, the modification was improper. We agree.

**{¶9}** The divorce decree states that Wife "shall be entitled to and shall receive an interest in the pension and retirement benefits of [Husband] with the Ford Motor Company[]" and that Wife's interest is:

> one-half (1/2) of the fraction the numerator of which is the number of years that the [Husband] participated in said plan while married to [Wife], the denominator of which is the total number of years [Husband] participates in said plan, times the total benefits to be received.

The decree provided for the issuance of a QDRO "to insure that [Wife] receives her share of said [pension and retirement] benefits." The domestic relations court "reserve[d] and retain[ed] the right to make any orders at any time in the future necessary to carry out the terms and intention and purpose of [the divorce decree] and [QDRO][.]"

**{¶10}** Like the divorce decree, the stipulated QDRO states that Wife's interest in Husband's retirement plan is "one-half (½) of the fraction the numerator of which is the number of years that [Husband] participated in said plan while married to [Wife] (1/22/82 to 7/10/96), the denominator of which is the total number of years [Husband] participates in said plan, times the benefits to be received." It is undisputed that neither the decree nor the stipulated QDRO distinguished between contributory and non-contributory portions of Husband's retirement benefits.

**{¶11}**  It is well-settled that "[p]ension or retirement benefits earned during the course of a marriage are marital assets and a factor to be considered in the division of property." *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, ¶ 5, citing *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 178-179 (1990). *Accord* R.C. 3105.171(A)(3)(a)(i) ("'Marital property' means * * * [a]ll real and personal property that is currently owned by either or both of the spouses, including * * * the retirement benefits of the spouses * * *."). A QDRO "implements a trial court's decision of how [retirement benefits are] to be divided incident to divorce or dissolution." *Wilson* at ¶ 7.

**{¶12}**  "While  a [domestic relations] court has the power to enforce a property division incorporated into a divorce decree, * * * [it]  may not modify that property division." *Straw v. Straw*, 9th Dist. Lorain No. 04CA008433, 2004-Ohio-4065, ¶ 4, citing R.C. 3105.171(I); *Bond v. Bond*, 69 Ohio App.3d 225, 227 (9th Dist.1990).  R.C. 3105.17(I), titled "Division of marital property; separate property" states:

* * *

> (I)  A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses.

* * *

"A property division made in accordance with R.C. 3105.171, including any distributive awards, is not subject to future modification by the court." *Abate v. Abate*, 9th Dist. Summit No. 19560, 2000 WL 327227, *4; *Bobie v. Bobie*, 12th Dist. Butler No. CA2022-12-119, 2023-Ohio-3293, ¶ 72 ("once the trial court divides the marital property and enters the final decree of divorce, the judgment is final and the court no longer possesses jurisdiction over the division of marital assets.") "The trial court cannot overcome this rule by an explicit reservation of continuing jurisdiction." *Abate* at *4.

{¶13}  While a trial court maintains authority to clarify an ambiguity in a divorce decree, its jurisdiction is limited to clarifying those terms that are "'capable of being understood in two or more possible senses or ways[.]'" *Nelson v. Nelson*, 9th Dist. Medina No. 16CA0029-M, 2017-Ohio-35, ¶ 7-8, quoting *Merriam-Webster's Collegiate Dictionary* 39 (11th Ed.2005).  Absent the parties' express written consent or agreement, R.C. 3105.171(I) prohibits the trial court from modifying the parties' agreement as contained in a divorce decree.  *See Walsh v. Walsh*, 157 Ohio St.3d 322, 2019-Ohio-3723, ¶ 1, citing R.C. 3105.171(I) (recognizing that property division may be modified only upon the express written consent or agreement by both spouses); *Borzy v. Borzy*, 9th Dist. Medina No. 3185-M, 2001 WL 1545676, *2 (Dec. 5, 2001) (recognizing that, absent the express written consent or agreement of both spouses, the domestic relations court's authority is limited to "clarify[ing] and constru[ing] its original property division so as to effectuate its judgment.")

{¶14}  In this case, the trial court adopted a magistrate's decision.  "Generally, the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion."  *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5.  However, "[i]n so doing, we consider the trial court's action with reference to the nature of the underlying matter."  *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049, 2009-Ohio-3139, ¶ 18.  An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  When applying the abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court.  *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶15} The divorce decree and stipulated QDRO unambiguously awarded Wife retirement benefits in the amount of "one-half (1/2) of the fraction the numerator of which is the number of years that [Husband] participated in said plan while married to [Wife] (1/22/82 to 7/10/96), the denominator of which is the total number of years [Husband] participates in said plan, times the benefits to be received." It is undisputed that neither the divorce decree nor the stipulated QDRO distinguished contributory and non-contributory portions of Husband's retirement benefits and that, as such, Ford's interpretation was consistent with the decree and QDRO. Husband now wants to modify the terms of the decree so that it distinguishes contributory and non-contributory portions of his retirement benefits.

{¶16} If the amount Wife receives from Husband's retirement benefits with Ford is limited to a non-contributory calculation, as Husband claims, Husband's expert acknowledged that the stipulated QDRO would need to be amended. The QDRO in this case is the exact same language as the parties' divorce decree; modifying the QDRO is an amendment of the parties' agreement reflected in the divorce decree. We conclude that such an amendment would constitute a modification of the parties' divorce decree and stipulated QDRO without "the express written consent or agreement to the modification by both spouses." R.C. 3105.171(I).

{¶17} Husband acknowledged the need for a QDRO modification in his motion to modify and clarify judgment entry. In his motion, Husband specifically asked the trial court to "modify the language regarding [his] retirement and pension to effectuate the intent of the Judgment Entry." While Husband testified as to his intent, Husband's intent is irrelevant. Husband is seeking a modification of pension or retirement benefits, which constitute "marital assets and a factor to be considered in the division of property." *Wilson*, 116 Ohio St.3d, 2007-Ohio-6056 at *¶ 5*. A property division is not subject to future modification by a trial court absent "the express written

agreement to the modification by both spouses." R.C. 3105.171(I); *Abate*, 9th Dist. Summit No. 19560, 2000 WL 327227, at *4.

**{¶18}** While the trial court maintains that it did not modify the parties' original divorce decree, we disagree with this conclusion. Husband's motion specifically requested a modification of the decree language regarding the division of his pension in the QDRO. It is undisputed that neither the divorce decree nor the original stipulated QDRO distinguished between non-contributory and contributory portions of Husband's retirement benefits. We conclude that changing the original stipulated QDRO to reflect such a distinguishment constitutes a modification to the parties' divorce decree. Absent "the express written consent or agreement to the modification by both spouses[,]" the trial court did not have jurisdiction to modify the divorce decree and QDRO. R.C. 3105.171(I). Wife's assignment of error is sustained.

### III.

**{¶19}** Because the trial court improperly modified the parties' divorce decree, we reverse the judgment of the Lorain County Common Pleas Court, Domestic Relations Division. This matter is remanded for the court to correct its judgment entry in accordance with this decision.

Judgment reversed,
cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

HENSAL, P.J.
CONCURRING IN JUDGMENT ONLY.

{¶20} The plain language of Revised Code Section 3105.171(I) compels me to concur in the disposition reached by the majority opinion. Section 3105.171(I) provides that a property division "is not subject to future modification * * * except upon the express written consent or agreement to the modification by both spouses." This language unambiguously requires three things: (1) "written consent or agreement[,]" (2) by both parties, (3) "to the modification." *Id.*

{¶21} Before 2010, however, Section 3105.171(I) did not permit modification by any means. Interpreting the previous version of the statute, this Court recognized on several occasions that a trial court could not reserve the ability to modify a property division. *See Bevan v. Bevan*, 9th Dist. Lorain No. 06CA008969, 2008-Ohio-724, ¶ 7; *Merril v. Pajak*, 9th Dist. Wayne No. 01CA0030, 2002 WL 121195, *5 (Jan. 30, 2002); *Abate v. Abate*, 9th Dist. Summit No. 19560,

2000 WL 327227, *4 (Mar. 29, 2000); *Bowen v. Bowen*, 132 Ohio App.3d 616, 634 (9th Dist.1999). The language of the current version of Section 3105.171(I) provides a specific means of modification. *See generally Walsh v. Walsh*, 157 Ohio St.3d 322, 2019-Ohio-3723, ¶ 19-24 (rejecting application of Civil Rule 60(B) when Section 3105.171(I) applies).

{¶22} In this case, the divorce decree incorporated the terms of the parties' separation agreement, which provided, in part, that that the trial court "specifically reserves and retains the right to make any orders at any time in the future necessary to carry out the terms and intention and purpose of this Judgment Entry and Qualified Domestic Relations Order." One court has concluded that when a divorce decree incorporates the parties' agreed property division, Section 3105.171(I) permits modification when the parties have agreed "to the fact of modification itself." *Passage v. Passage*, 2d Dist. Greene No. 2105-CA-36, 2016-Ohio-1097, ¶ 44-51. Most courts, however, have concluded that the phrase "to the modification" means that "the express written consent or agreement" to the modification at issue is required. Consequently, as under the previous version of the statute, those courts conclude that a trial court cannot reserve jurisdiction to modify a property division under any circumstances. *See*, *e.g.*, *Bobie v. Bobie*, 12th Dist. Butler No. CA2022-12-119, 2023-Ohio-3293, ¶ 72; *Christ v. Christ*, 7th Dist. Noble No. 20 NO 0472, 2021-Ohio-2016, ¶ 45; *Merkle v. Merkle*, 5th Dist. Licking No. 13-CA-31, 2014-Ohio-81, ¶ 16. Given the plain language of the statute, I agree that this view is correct.

{¶23} The language in the divorce decree, therefore, did not permit modification apart from compliance with the terms of Section 3105.171(I). I agree with the majority's disposition because the trial court's action modified the property division and because the current version of Section 3105.171(I) does not contemplate that a trial court can do so apart from "the express written consent or agreement to the modification by both spouses."

APPEARANCES:

DAVID J. BERTA, Attorney at Law, for Appellant.

GIOVANNA V. BREMKE, Attorney at Law, for Appellee.